UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALSOFT LABS, INC. and PVR TECHNOLOGIES, INC., | Case No. 19-cv-04398-NC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| VENKATA PANCHUMARTHI and TRUINFO TECHNOLOGIES INC., | Re: Dkt. No. 15 |
| Defendants. | |

Before the Court is defendants Venkata Panchumarthi and Truinfo Technologies, Inc.'s motion to dismiss plaintiffs Calsoft Labs, Inc. and PVR Technologies, Inc.'s first amended complaint. *See* Dkt. No. 15. Because Plaintiffs' complaint fails to allege specific facts to support their allegations, the Court GRANTS Defendants' motion to dismiss with leave to amend.

## I. Background

### A. Factual Allegations in the Complaint

Calsoft is a technology company. *See* Dkt. No. 14 ("FAC") ¶ 11. In February 2016, Calsoft purchased PVR, a biostatistics and statistical programming services company, from Panchumarthi, the former owner and CEO of PVR. *Id.* ¶¶ 12, 14. To assist the acquisition transition, Calsoft hired Panchumarthi as the CEO of PVR pursuant to an Employment Agreement. *Id.* ¶ 16. In addition, as part of the acquisition,

Panchumarthi was prohibited from disclosing confidential Calsoft information, soliciting Calsoft's customers and employees, and competing with Calsoft in certain business activities pursuant to the parties' Purchase Agreement. *Id.* ¶ 14. But Panchumarthi did not intend to honor those restrictions and instead intended to unfairly compete with Calsoft. *Id.* ¶¶ 15, 17, 23. Panchumarthi's employment with PVR was terminated on August 31, 2018. *Id.* ¶ 18.

On September 4, 2018, Calsoft and PVR hired Truinfo—another company owned and operated by Panchumarthi—as an independent contractor. *Id.* ¶ 19. The parties' Contractor Agreement prohibited Panchumarthi and Truinfo from disclosing confidential information and soliciting Calsoft and PVR's customers and employees. *Id.* The Contractor Agreement also prohibited Panchumarthi from competing against Calsoft in certain business activities. *Id.* ¶ 21. Neither Panchumarthi nor Truinfo intended to honor those responsibilities. *Id.* ¶ 20.

On December 31, 2018, the parties terminated the Contractor Agreement. *Id.* ¶ 24. Under that agreement, Truinfo was required to turn over to Plaintiffs "all documents, papers and other matters in its possession or under its control that relate to [Calsoft] or its end Clients." *Id.* Plaintiffs also terminated Panchumarthi's access to their confidential information, email and data servers, electronic files, and intellectual property in January 2019. *Id.* ¶ 25.

On February 11, 2019, Panchumarthi contacted GoDaddy Inc. and requested a password reset for his former email account, which was owned by PVR. *Id.* ¶ 27. Panchumarthi identified himself as an agent of Plaintiffs by using a confidential PIN for authorization. *Id.* ¶¶ 27, 29. GoDaddy then sent Panchumarthi a one-time password to access the email account. *Id.* ¶ 28. Panchumarthi then accessed Plaintiffs' email and data servers to copy and delete confidential information. *Id.* ¶¶ 31, 32.

On February 26, 2019, Plaintiffs discovered that Panchumarthi had changed the password to his PVR email account because he had changed the password without their knowledge. *Id.* ¶ 29.

**B.    Procedural History**

On June 10, 2019, Calsoft initiated this lawsuit in Santa Clara County Superior Court.  *See* Dkt. No. 1 at 6.  After Defendants removed the lawsuit to this Court on the basis of diversity jurisdiction (*see id.* at 3), Calsoft filed a first amended complaint and added co-plaintiff PVR.  *See* Dkt. No. 14.

In their first amended complaint, Plaintiffs allege claims for: (1) breach of fiduciary duty; (2) conversion; (3) fraud; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (5) intentional interference with contract; (6) intentional interference with prospective economic relations; (7) trade secrets misappropriation; (8) breach of the Purchase Agreement; (9) breach of the Employment Agreement; (10) breach of the Contractor Agreement; (11) breach of the covenant of good faith and fair dealing; (12) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*; and (13) conspiracy to violate CFAA.  *See id.*

Defendants moved to dismiss the majority of Plaintiffs' claims on September 11, 2019.  *See* Dkt. No. 15.  All parties have consented to the jurisdiction of a magistrate judge.  *See* Dkt. Nos. 10, 11; *see also* Dkt. No. 23 at 5–6.

## II.    Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief.  *See* Fed. R. Civ. P. 8(a).  Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim also "must contain

sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. Breach of Fiduciary Duty

In their first claim, Plaintiffs accuse Defendants of breaching their fiduciary duty. *See* FAC ¶¶ 33–38. "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary duty, its breach, and damage proximately caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998).

"A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003) (quotations omitted). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Center v. Genetech, Inc.*, 43 Cal. 4th 375, 386 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983)). "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf*, 107 Cal App. 4th at 30.

Here, Plaintiffs allege that "[a] fiduciary relationship existed between plaintiffs and defendants because defendants acted as agents [and] corporate officers . . . ." FAC ¶ 34. From February 2016 to August 2018, Panchumarthi was the CEO of PVR. *See id.* ¶¶ 16–18. "[O]fficers of corporations who participate in the management of the corporation are considered fiduciaries as a matter of law." *Los Angeles Mem'l Coliseum Comm. v.*

*Insomniac, Inc.*, 233 Cal. App. 4th 803, 834 (2015) (citing *GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 421 (2000)).  Although an officer's fiduciary duty to their employer generally ends upon their resignation (*GAB*, 83 Cal. App. 4th at 421), officers are charged with a continuing duty to protect privileged and confidential information even after they leave the company.  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1148–49 (N.D. Cal. 2019).  Because Panchumarthi served as PVR's CEO, the Court assumes he had a fiduciary duty to PVR and that the duty continued after the end of his tenure.

On the other hand, Plaintiffs fail to allege any facts suggesting that Truinfo had a fiduciary duty to Plaintiffs.  Plaintiffs argue that the confidentiality provisions of the Contractor Agreement created a fiduciary relationship.  *See* Dkt. No. 17 at 8–9; FAC ¶ 34. But Plaintiffs cite no authority suggesting that ordinary confidentiality provisions alone can impose fiduciary duties.  Plaintiffs' reliance on *Wolf* is unpersuasive.  Although the California Court of Appeal described a fiduciary relationship as "ordinarily synonymous with a confidential relation[,]" the court's reference to "confidential" described the "confidence . . . reposed by one person in the integrity of another," not a contractual obligation to keep information confidential.  *Wolf*, 107 Cal. App. 4th at 29–30.

Moreover, if Plaintiffs' breach of fiduciary duty claim relies solely on Defendants' misappropriation of their trade secrets in violation of the confidentiality provisions, California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et al*., may supersede Plaintiffs' claim.  *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 989–991(C.D. Cal. 2010) (dismissing breach of fiduciary duty claim to the extent predicated on misappropriation of confidential information).

In any case, Plaintiffs fail to adequately allege breach as to both Panchumarthi and Truinfo.  The only allegations suggesting that Defendants breached their fiduciary duty are

Plaintiffs' threadbare assertions that Defendants "acquired information from the Plaintiffs regarding their clients and potential clients, and took steps to compete against plaintiffs and such acts were against the plaintiffs' best interests." *Id.* ¶ 23. Without more factual development, these allegations are conclusory and fail "to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. Plaintiffs must explain what steps Defendants took that were against Plaintiffs' best interests.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim with leave to amend.

### B. Conversion

Plaintiffs' second claim alleges conversion. *See* FAC ¶¶ 39–43. Defendants argue that this claim is preempted by CUTSA. *See* Dkt. No. 18 at 12. Because Defendants raise this argument for the first time in their reply and Plaintiffs have not had a chance to respond, the Court will not dismiss Plaintiffs' conversion claim at this time.

### C. Fraud

In their third claim, Plaintiffs allege that Defendants committed fraud on three instances: (1) entering into the Employment and Purchase Agreement (*see* FAC ¶ 45); (2) entering into the Contractor Agreement (*see id.* ¶ 46); and (3) accessing and concealing the fact that they accessed Plaintiffs' confidential information (*see id.* ¶¶ 47–51). The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)).

Under Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud or mistake" must be alleged with particularity. Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Although intent and other mental conditions may be

alleged generally, conclusory allegations do not suffice.  *See Senah, Inc. v. Xi'an Forstar S&T Co, Ltd*, No. 13-cv-04254-BLF, 2014 WL 6065895, at *2 (N.D. Cal. Nov. 12, 2014); *Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011).

Plaintiffs' allegations that Defendants committed fraud by entering into the three Agreements are conclusory.  Although allegations of intent do not need to satisfy the heightened pleading standard of Rule 9(b), Plaintiffs must still plead *some* facts that allow the Court to reasonably infer that Plaintiffs never intended to uphold their obligations under the Agreements.  *See Senah*, 2014 WL 6065895, at *2.

Plaintiffs' alternative theory that Defendants committed fraud by concealing their unauthorized access to confidential information is also insufficiently alleged.  In their complaint, Plaintiffs claim that Panchumarthi lied when "confronted . . . regarding his unauthorized accessing of confidential information . . . ."  FAC ¶ 48.  This allegation of when the fraud occurred must be alleged with particularity.

More critically, it is not clear that Plaintiffs can establish reliance and damage based on this theory of concealment.  In the complaint, Plaintiffs allege that Panchumarthi accessed their confidential information on February 11, 2019.  *Id.* ¶ 27.  Plaintiffs discovered the unauthorized access two weeks later.  *Id.* ¶ 29.  Even if the Court assumes that Panchumarthi fraudulently concealed his unauthorized access during that two-week period, Plaintiffs' allegation that they "would have acted differently . . . to prevent defendants' unauthorized and unlawful access to such information" is confusing because the harm—Panchumarthi's unauthorized access to Plaintiffs' confidential information—has already been done.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' fraud claim with leave to amend.

### D.    Intentional Interference with Contractual Relations

Plaintiffs' fifth claim alleges that Defendants intentionally interfered with their contractual relationships by soliciting and taking their customers and employees.  *See* FAC

¶¶ 56–62. The elements of an intentional interference with contractual relations claim are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Plaintiffs' allegations fail to state a claim for intentional interference with contractual relations. The first amended complaint does not, for example, identify (1) particular contracts that were interfered with; (2) any breach or disruption of those contracts; and (3) what damage Plaintiffs suffered as a result. Likewise, Plaintiffs vaguely assert that Defendants' conduct "prevented performance or made performance more expensive or difficult" without explanation what it was that Plaintiffs needed to perform. *Id.* ¶ 59. Instead, the complaint merely recites the elements of the claim and provides no factual details. *See AlterG*, 388 F. Supp. 3d at 1150 (N.D. Cal. 2019) (dismissing claim where plaintiff failed to identify the particular "vendors, supplies, and customers" or provide details regarding their third-party contracts); *cf. HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 996 (9th Cir. 2019) (applying the elements of an interference of contractual relations claim on a motion for preliminary injunction).

In their opposition, Plaintiffs contend that more detailed pleading is not possible without discovery. *See* Dkt. No. 17 at 11–12. The Court is not persuaded. Plaintiffs do not need discovery to learn which clients and employees they have lost.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' intentional interference with contractual relations claim with leave to amend.

### E.     Intentional Interference with Prospective Economic Relations

Plaintiffs' sixth claim alleges that Defendants intentionally interfered with their prospective economic relations. *See* FAC ¶¶ 63–70. The elements of an intentional interference with prospective economic relations claim are similar to the elements of an intentional interference with contractual relations claim. *See PG&E*, 50 Cal. 3d at 1126.

The key difference is that an interference with prospective economic relations claim does not require a legally binding contract. *Id.* Instead, it only requires "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Id.* at 1126 n.2.

As with their intentional interference with contractual relations claim, Plaintiffs fail to identify which third parties they had a relationship with. Plaintiffs also fail to allege any facts suggesting that those relationships had a "probability of future economic benefit." *Id.*; *see also AlterG*, 388 F. Supp. 3d at 1151–52.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' intentional interference with prospective economic relations with leave to amend.

## F. Trade Secret Misappropriation

In their seventh claim, Plaintiffs allege that Defendants misappropriated their trade secrets. *See* FAC ¶¶ 71–78. Specifically, Plaintiffs claim that Defendants misappropriated and destroyed "confidential information, including intellectual property, customer and employee lists and contact information . . . ." *Id.* ¶ 72.

To state a claim for trade secret misappropriation, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). CUTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Misappropriation encompasses both improper acquisition and unauthorized disclosure or use of a trade secret. *Id.* § 3426.1(b). "[A] plaintiff need not

spell out the details of the trade secret . . . but must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices*, 343 F. Supp. 3d at 881 (citation and quotation marks omitted).

Here, Plaintiffs fail to adequately describe the trade secrets at issue. The complaint merely lists broad categories of "confidential information" rather than specific descriptions of the alleged trade secrets. *See AlterG*, 388 F. Supp. 3d at 1145–46. For example, Plaintiffs' naked allegation that its customer list constitutes a trade secret does not provide enough factual detail to suggest that it "[d]erives independent economic value . . . from not being generally known to the public." Cal. Civ. Code § 3426.1(d). It is not clear whether Plaintiffs' lists simply contain public information or information already known to Defendants (*see, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Services*, 239 Cal. Rptr. 3d 577, 595–96 (2018) ("very general" information revealed through a public social media group is not secret)) or if those lists include extensive customer or employee data (*see, e.g.*, *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1018 (2005) (lists were trade secret when they contained compilations of compensation, employment preferences, contact information, applications and tests)).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' trade secrets misappropriation claim with leave to amend.

### G.    Breach of Contract and the Covenant of Good Faith and Fair Dealing

Plaintiffs' eight, ninth, and tenth claims assert breach of the Purchase, Employment, and Contractor Agreements. *See* FAC ¶¶ 79–100. Plaintiffs' eleventh claim asserts breach of the implied covenant of good faith and fair dealing. *See id.* ¶¶ 101–107.

The elements of a breach of contract claim are: (1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A claim for breach of the implied covenant of good faith and fair dealing is similar to a breach of contract claim

except the plaintiff must show "the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (citations omitted).

The only element at issue here is breach. *See* Dkt. No. 15 at 18. Plaintiffs allege that Panchumarthi breached the Purchase and Employment Agreements during his tenure as CEO of PVR by "acquir[ing] information from the Plaintiffs regarding their clients and potential clients, and [taking] steps to compete against plaintiffs . . . ." *Id.* ¶ 23. However, as explained above, these allegations are conclusory and fail to give fair notice of the misconduct in question. *Starr*, 652 F.3d at 1216. Thus, as with their breach of fiduciary duty claim, Plaintiffs must allege specific facts to support their claim: either the specific "steps" taken by Defendants or factual circumstances plausibly suggesting wrongdoing.

Plaintiffs also allege that Defendants breached the Contractor Agreement by using their confidential information to solicit customers and employees. As with their trade secrets misappropriation claim, Plaintiffs do not allege with sufficient particularity what confidential information was stolen. They merely list broad categories of information covered by the agreements. This is insufficient to state a claim. *See AlterG*, 388 F. Supp. 3d at 1147.

Lastly, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim merely recites the elements of the claim. *See* FAC ¶¶ 101–07. Plaintiffs allege no facts supporting their assertion that Defendants unfairly interfered with their rights under the three Agreements.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' breach of contract and the implied covenant of good faith and fair dealing claims with leave to amend.

### H.    Computer Fraud and Abuse Act Conspiracy

Plaintiffs' thirteenth claim alleges conspiracy to violate the Computer Fraud and Abuse Act ("CFAA"). *See* FAC ¶¶ 116–17. Defendants argue that the CFAA does not permit a civil conspiracy claim and the claim should accordingly be dismissed with prejudice. *See* Dkt. No. 15 at 23. Plaintiffs do not oppose dismissal of the claim but argues that dismissal should be with leave to amend. *See* Dkt. No. 17 at 17.

As an initial matter, the Court disagrees with Defendants; the CFAA permits a civil conspiracy claim. Under the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator . . . ." 18 U.S.C. § 1030(g). A "violation of this section" includes conspiracy to commit conduct prohibited by the CFAA. *See* 18 U.S.C. § 1030(b). Thus, a plaintiff may pursue a claim for conspiracy under the CFAA if that conspiracy caused damage or loss. Other courts in this district have also permitted conspiracy claims under the CFAA. *See, e.g.*, *Genentech, Inc. v. JHL Biotech, Inc.*, No. 18-cv-06582-WHA, 2019 WL 2476617, at *4 (N.D. Cal. June 13, 2019); *NetApp, Inc. v. Nimble Storage, Inc.*, No. 13-cv-05058-LHK, 2015 WL 400251, at *8 (N.D. Cal. Jan. 20, 2015).

Defendants argue that the Plaintiffs cannot sue for conspiracy under the CFAA because § 1030(b) provides for criminal, not civil, punishment for conspiracy. *See* Dkt. No. 15 at 23. But § 1030(g) broadly provides a civil right of action for any person injured "by reason of a violation of this section." The only limit on the scope of § 1030(g) is that the conduct alleged must include one of five factors listed in § 1030(c)(4)(A)(i). Defendants do not argue that all of those factors are absent.

Nonetheless, the Court will dismiss Plaintiffs' claim, but with leave to amend. To successfully allege a civil conspiracy claim, "the plaintiff [must] plead at least the basic elements of the conspiracy, especially the existence of an agreement." *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 990-91 (9th Cir. 2006) (citing *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004)). Accordingly, Plaintiffs must allege with sufficient factual particularity that defendants reached some

explicit or tacit understanding or agreement." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990). Because such factual allegations are missing here, the Court GRANTS Defendants' motion to dismiss Plaintiffs' CFAA conspiracy claim with leave to amend.

## I. Alter Ego Liability

Finally, Plaintiffs seek to impose alter ego liability on Defendants. *See* FAC at 20. To invoke the alter ego theory of liability, Plaintiffs must establish that (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and (2) "adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal.3d 353, 364 n. 9 (1977)).

Plaintiffs' broad assertions of unity of interest and injustice are conclusory. *See* FAC ¶ 6. There are no factual allegations, for example, to support Plaintiffs' assertion that Panchumarthi and Truinfo commingle funds or that Panchumarthi treats Truinfo's assets as his own. *See Schwarzkopf*, 626 F.3d at 1038. Nor do Plaintiffs explain the factual basis for their conclusion that Defendants "disregarded legal formalities." FAC ¶ 6. Likewise, Plaintiffs simply conclude, with no factual support, that an inequitable result will occur if alter ego liability were not imposed. *Id.* Such broad allegations are insufficient. *See Carlson v. Clapper*, 791 F. Supp. 2d 774, 782–83 (N.D. Cal. 2011).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claims against Truinfo to the extent they are based on alter ego liability. Dismissal is with leave to amend.

## IV. Conclusion

The Court GRANTS Defendants' motion to dismiss with leave to amend. Plaintiffs must file their second amended complaint by **November 29, 2019**. Plaintiffs may not add additional claims or parties without further leave of the Court. If Plaintiffs fail to meaningfully amend their factual allegations, further dismissal will be with prejudice.

13

Defendants need not answer the first amended complaint unless Plaintiffs give notice that they will not file a second amended complaint.

**IT IS SO ORDERED.**

Dated:  November 7, 2019

NATHANAEL M. COUSINS
United States Magistrate Judge