UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALSOFT LABS, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>VENKATA PANCHUMARTHI, et al.,<br><br>        Defendants. | Case No. 19-cv-04398-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

Defendants Venkata Panchumarthi and Truinfo Technologies, Inc. move to dismiss plaintiff Calsoft Labs, Inc. and PVR Technologies, Inc.'s second amended complaint. *See* Dkt. No. 31. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. Because much of Plaintiffs' second amended complaint mirrors its first amended complaint, dismissal is largely without leave to amend.

## I.   Background

### A.   Factual Allegations in the Second Amended Complaint

In February 2016, Calsoft, a technology company, purchased PVR from Panchumarthi. *See* Dkt. No. 27 ("SAC") ¶ 14. At the same time, Panchumarthi agreed to serve as PVR's CEO until August 31, 2018. *Id.* ¶¶ 16, 18. Once Panchumarthi was no longer PVR's CEO, Calsoft and PVR hired Panchumarthi's new company, Truinfo Technologies, as an independent contractor. ¶ 19. Plaintiffs and Truinfo parted ways on

December 31, 2018.  *See id.* ¶ 24.  According to Plaintiffs, Panchumarthi secretly compiled confidential information during their relationship to compete against Plaintiffs.  *See id.* ¶¶ 15, 17, 20, 23.

On January 11, 2019, Plaintiffs terminated Panchumarthi's access to their email and data servers.  *Id.* ¶ 25.

On February 11, 2019, Panchumarthi contacted GoDaddy, Inc. and pretended to still be affiliated with Plaintiffs.  *Id.* ¶¶ 27–28.  At Panchumarthi's request, GoDaddy reset the password to his former PVR-affiliated email account.  *Id.*  Panchumarthi accessed the account and deleted all emails and information stored within.  *Id.* ¶ 29.  Plaintiffs discovered Panchumarthi's actions two weeks later.  *Id.* ¶ 30.

On February 20, 2019, Panchumarthi accessed PVR's Dropbox account, which contained customer lists, employee lists, and training programs.  *Id.* ¶ 31.  Panchumarthi copied the files in the account and changed his Dropbox ID.  *Id.*  In the following months, Panchumarthi used the information he acquired to poach employees and solicit Plaintiffs' customers.  *See id.* ¶¶ 39–41, 64, 66–67.

## B.  Procedural History

Plaintiffs filed their second amended complaint on November 29, 2019.  *See id.*  In their complaint, they allege claims for: (1) breach of fiduciary duty; (2) conversion; (3) fraud; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (5) intentional interference with contractual relationships; (6) intentional interference with prospective economic relations; (7) trade secret misappropriation; (8) breach of the purchase agreement; (9) breach of the employment agreement; (10) breach of the contractor agreement; (11) breach of the covenant of good faith and fair dealing; and (12) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.* *Id.* ¶¶ 34–137.

Defendants now move to dismiss the second amended complaint in its entirety.  *See* Dkt. No. 31.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  *See* Dkt. Nos. 10, 11; *see also* Dkt. No. 23 at 5–6.

## II.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief.  *See* Fed. R. Civ. P. 8(a).  Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.  Discussion

### A.    CUTSA Preemption

Before the Court addresses each individual claim, it will briefly discuss the preemptive scope of California's Uniform Trade Secret Act ("CUTSA"), Cal. Civ. Code §§ 3426, *et seq.*

CUTSA has "a comprehensive structure and breadth."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009) (quotation marks omitted).  "That breadth suggests a legislative intent to preempt the common law" for trade secret misappropriation claims in California.  *Id.*  CUTSA contains a specific preemption provision, Cal. Civ. Code § 3426.7, which "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *Id.*

at 958 (quotation marks omitted). Thus, "[a] claim cannot simply depend on a 'different theory of liability'" to avoid CUTSA preemption. *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2010) (citing *K.C. Multimedia*, 171 Cal. App. 4th at 957). Common law tort claims are superseded by CUTSA when they fail to "genuinely allege alternative legal theories" and instead simply "restat[e] a trade secrets claim as something else." *Zomm, LLC v. Apple, Inc.*, 391 F. Supp. 3d 946, 954 (N.D. Cal. 2017) (quoting *Silvaco*, 184 Cal. App. 4th at 240). At the same time, CUTSA does not preempt "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, [and] (2) other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).

Following the California Court of Appeal's decision in *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), a majority of courts have concluded that CUTSA supersedes claims arising from the alleged misappropriation of confidential information even if that information does not satisfy the definition of trade secrets under CUTSA. *See SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *6–7 (N.D. Cal. Dec. 11, 2012) (collecting cases). Thus, Plaintiffs' claims are superseded by CUTSA unless they arise from misconduct other than misappropriation of confidential information. *See Zomm*, 391 F. Supp. 3d at 954.

### B.   Breach of Fiduciary Duty

Plaintiffs' first claim is for breach of fiduciary duty. *See* SAC ¶¶ 34–44. Plaintiffs allege that Defendants breached their fiduciary duty by accessing confidential information without authorization and by poaching Plaintiffs' employees and clients. *Id.* ¶ 37.

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary duty, its breach, and damage proximately caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998). "A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit

4

of the other party." *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003) (quotations omitted). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Center v. Genetech, Inc.*, 43 Cal. 4th 375, 386 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983)). A fiduciary duty generally ends when the fiduciary resigns his office. *See Gab Bus. Servs. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 421 (2000), *disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (2004).

First, as the Court explained in its order granting Defendants' previous motion to dismiss, it is not clear that Truinfo owed Plaintiffs any fiduciary duty. Plaintiffs assert that Truinfo owed a fiduciary duty simply because Panchumarthi was the sole owner and CEO of Truinfo. *See* Dkt. No. 33 at 7. Plaintiffs, however, cite no authority for this proposition and the Court can find none. The second amended complaint simply contains no facts suggesting that Truinfo knowingly undertook any obligation to primarily act on Plaintiffs' behalf and for their benefit. *See City of Hope*, 43 Cal. 4th at 386.

In any case, Plaintiffs fail to state a claim for breach of fiduciary duty because their claim is superseded by CUTSA. The second amended complaint alleges that:

> [D]efendants breached their fiduciary duty to plaintiffs by accessing without authorization plaintiffs' confidential employee lists and data, customer lists and data and plaintiffs' proprietary and secret training data and programs valuable in the field of technology consulting and staffing.

SAC ¶ 37. The complaint then describes specific details regarding the employees and clients Defendants allegedly poached. *See id.* ¶¶ 38–41. These allegations, however, are precisely the allegations that would constitute a misappropriation of trade secrets claim. In fact, Plaintiffs base their misappropriation of trade secrets claim on nearly identical allegations. Specifically, Plaintiffs point to Defendants' alleged misappropriation of "confidential material, including intellectual property, *customer and employee lists and*

*contact information* that was of use and value in their competing business . . ." as the basis for their misappropriation claim. SAC ¶ 82 (emphasis added).

In passing, Plaintiffs allege that Defendants also breached their fiduciary duties by "competing unfairly with plaintiffs, taking profitable business opportunities that belonged to plaintiffs, and by making undisclosed profits in connection with defendant's unlawful transactions, in breach of the corporate opportunity doctrine." SAC ¶ 42. The corporate opportunity doctrine prohibits a fiduciary from acquiring, "in opposition to the corporation, property in which the corporation has an interest or tangible expectancy." *Kelegian v. Mgrdichian*, 33 Cal. App. 4th 982, 988 (1995). But Plaintiffs' factual allegations all stem from Panchumarthi's alleged misappropriation of confidential information.

Plaintiffs' reliance on *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495 (2013) is not persuasive. In *Angelica*, a linens and laundry service accused its former vice president of violating his fiduciary duties. *See id.*, 220 Cal. App. 4th at 500. According to the laundry service, the vice president worked with two board members of one of its clients to develop a business plan for a competing laundry business while still employed at the laundry service. *Id.* at 501. Around the same time, the vice president also approached a local bank to help the competing venture obtain financing. *Id.* And the vice president also altered the laundry service's contracts with its largest customers to allow those customers to terminate the laundry service's services early for no penalty. *Id.* at 501–02. Unlike Plaintiffs here, the laundry service relied on conduct other than the misappropriation of confidential client and business information to assert its breach of fiduciary duty claim. *Angelica* is thus distinguishable.

Likewise, Plaintiffs' reliance on *Value Prop. Trust v. Zim Co. (in re Mortgage & Realty Trust)*, 195 B.R. 740 (Bankr. C.D. Cal. 1996) misses the point. *In re Mortgage* is inapposite; it did not discuss CUTSA as no party asserted trade secret claims in that case.

Because Plaintiffs' claim for breach of fiduciary duty is superseded by CUTSA, the Court GRANTS Defendants' motion to dismiss. Dismissal is without leave to amend

because Plaintiffs have been unable to meaningfully amend their factual allegations and further amendment would be futile.

### C. Conversion

Plaintiffs' second claim is for conversion. They allege that Defendants converted their "confidential information, electronic files, information on their email and data servers, Dropbox cloud folders, and intellectual property." SAC ¶ 46.

"To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) (quoting *Del. E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 610–11 (1981)). In particular, a plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998)). Conversion "traditionally required a taking of *tangible* property, and thus was not available to remedy the misappropriation of something like a trade secret." *Silvaco*, 184 Cal. App. 4th at 239 n.21 (emphasis in original).

Under *Silvaco*, "if the only arguable property identified in the complaint is a trade secret, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is unquestionably based upon misappropriation of a trade secret and the conversion claim is preempted." *Id.* at 238 (quotation marks and citation omitted). The only way to escape CUTSA preemption "is the plaintiff's assertion of *some other basis in fact or law* on which to predicate the requisite property right." *Id.* at 238–39 (emphasis in original). *Silvaco* also "emphatically reject[ed] the . . . suggestion that [CUTSA] was not intended to preempt common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." *Silvaco*, 184 Cal. App. 4th at 239 n.22 (quotation marks omitted).

Here, as with their breach of fiduciary duty claims, Plaintiffs' conversion claim

revolves around the same intangible property implicated by their misappropriation of trade secrets claim. Thus, under *Silvaco*, Plaintiffs' conversion claim is superseded by CUTSA.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' conversion claim. As with their breach of fiduciary duty claim, dismissal is without leave to amend.

### D.    Fraud

In their third claim, Plaintiffs allege that Defendants committed fraud on three instances: (1) entering into the employment and purchase agreement regarding PVR (*see* FAC ¶ 51); (2) entering into the contractor agreement (*see id.* ¶ 52); and (3) accessing and concealing the fact that they accessed Plaintiffs' confidential information (*see id.* ¶¶ 53–57).

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)).

Under Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud or mistake" must be alleged with particularity. Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Although intent and other mental conditions may be alleged generally, conclusory allegations do not suffice. *See Senah, Inc. v. Xi'an Forstar S&T Co, Ltd*, No. 13-cv-04254-BLF, 2014 WL 6065895, at *2 (N.D. Cal. Nov. 12, 2014).

Plaintiffs' amendments fail to meaningfully address the deficiencies outlined in the Court's prior order. *See* Dkt. No. 25. First, in their second amended complaint and opposition to the instant motion, Plaintiffs do not meaningfully explain how they relied on Defendants' alleged access of their confidential information and Defendants' concealment of that access. As the Court previously explained (*see id.* at 7), Plaintiffs allege no facts

explaining how they would have "acted differently absent [Defendants'] concealment" of their unauthorized access.  SAC ¶ 57.

Next, Plaintiffs have not amended their complaint to add any facts that allow the Court to reasonably infer that Defendants never intended to uphold their obligations under the Agreements.  *See Senah*, 2014 WL 6065895, at *2; *see also Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) (Pleading scienter generally "does not mean . . . that conclusory allegations of knowledge or intent suffice.").  Indeed, Plaintiffs' fraud allegations in their second amended complaint are nearly identical to their allegations in their first amended complaint.

Plaintiffs merely point to *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012) to support their position.  Although the California Court of Appeal broadly stated the general rule that states of mind can be alleged generally, *Beckwith* is readily distinguishable.  In *Beckwith*, the plaintiff accused his partner's sister of promising that she would create a trust for the partner's million-dollar estate when she had no intention to do so.  *See id.* at 1047.  The plaintiff, however, also alleged significant facts giving context to the situation that would allow a court to infer intent to defraud.  In particular, the plaintiff alleged that his partner and the sister were estranged.  *Id.* at 1046.  After the partner was hospitalized, the plaintiff approached the sister to prepare a will according to the partner's wishes, but the sister persuaded the plaintiff to hold off on preparing the will and offered to create a trust for the partner's estate instead.  *Id.* at 1047.  Shortly after, the hospital informed the sister, but not the plaintiff, that the partner had to undergo a risky surgery.  *Id.*  And when the surgery went poorly, the sister followed the doctor's recommendations to remove the partner from life support.  *Id.*  At no point did the sister give the partner any trust documents to sign.  *Id.*

By contrast, here, Plaintiffs' allegations of fraud revolve solely around Defendants' alleged misconduct after the contracts in question were performed.  Plaintiffs provide barely any factual context to the contracts' formation.  Plaintiffs simply assert that Panchumarthi "did not intend to live up to his responsibilities" with no further factual

9

development.  SAC ¶¶ 15, 17, 20.  Plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Richardson v. Reliance Nat. Indem. Co.*, No. 99-cv-2952-CRB, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000) ("Under plaintiff's theory, every breach of contract would support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise.").

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' fraud claim.  Because Plaintiffs have failed to meaningfully amend their complaint, dismissal is without leave to amend.

### E.     Intentional Interference with Contractual and Prospective Economic Relationships

Plaintiffs' fifth and sixth claims are for intentional interference with contractual and prospective economic relationships, respectively.  SAC ¶¶ 63–80.

The elements of an intentional interference with contractual relations claim are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

The elements of an intentional interference with prospective economic relations claim are similar.  *See PG&E*, 50 Cal. 3d at 1126.  The key difference is that an interference with prospective economic relations claim only requires "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Id.* at 1126 n.2.

Both claims are superseded by CUTSA.  Plaintiffs' second amended complaint alleges that Defendants interfered with their contractual and prospective economic relationships by poaching their employees and clients using the information obtained through Panchumarthi's unauthorized access of Plaintiffs' email and Dropbox accounts.

See SAC ¶¶ 66–67, 74–75.  These allegations arise from the "same nucleus of facts as the misappropriation of trade secrets claim for relief": Defendants' alleged and unauthorized access to Plaintiffs' confidential information.  *K.C. Multimedia*, 171 Cal. App. 4th at 958.

As with their breach of fiduciary duty claim, *Angelica* does not help Plaintiffs.  The defendant in *Angelica* engaged in activity beyond mere misappropriation of information including, for example, altering client contracts and preparing business plans for a competitor.  *See Angelica*, 220 Cal. App. 4th at 501–02.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' intentional interference with contractual and prospective economic relationships.  Because leave to amend would be futile, dismissal is without leave to amend.

## F.    Misappropriation of Trade Secrets

Plaintiffs' seventh claim is for misappropriation of trade secrets.  SAC ¶¶ 81–88. Plaintiffs specifically identify "customer lists and data, employee lists and data and proprietary training data and programs valuable in the field of technology consulting and staffing" as the relevant trade secrets.  *Id.* ¶ 83.

To state a claim for trade secret misappropriation, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).  "[A] plaintiff need not spell out the details of the trade secret . . . but must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  *Alta Devices*, 343 F. Supp. 3d at 881 (citation and quotation marks omitted).

As to the "customer lists and data, employee lists and data," Plaintiffs have again failed to describe the secret with sufficient particularity.  The second amended complaint offers only one conclusory qualifier to describe the trade secret.  *See* SAC ¶ 23 ("The information was compiled by the plaintiffs *in such a way* that it derived independent

economic value . . . from not being generally known to the public . . . .") (emphasis added). That is not enough.

Comparing Plaintiffs' allegations to those in the cases cited in their opposition brief illustrates the difference. In *American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 662, 630 (1989), the plaintiff insurance company explained that their customer lists included: "the names, addresses and telephone numbers of policyholders, the amounts and types of insurance . . . , due dates of premiums and amounts thereof, . . . , and particularly the renewal and expiration dates of policies in force." In *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1135 (E.D. Cal. 2008), the plaintiff orthotics care center's "referral sources [were] only a part of the information contained in [its] confidential . . . files." The orthotics care center's patient files also included "prescriptions/referral source information, treatment records, addresses, etc. and the electronic Orthotics Prosthetics System (OPS) contains patient information, and referral source information." *Id.* Here, Plaintiffs simply point to their customer and employee lists with no factual enhancement that suggest why it was not a "matter[] of general knowledge in the trade." *Alta Devices*, 345 F. Supp. 3d at 881.

The second amended complaint adds new allegations regarding Plaintiffs' "proprietary training data and programs valuable in the field of technology consulting and staffing." SAC ¶ 83. This is also far too vague, especially in light of the fuzzily described scope of Calsoft and PVR's business. *See, e.g.*, *id.* ¶ 11 (describing Calsoft as being "in the business of internet technology, information technology, product engineering, statistical programming and data management, and related services."). In *TMX Funding, Inc. v. Impero Techs., Inc.*, No. 10-cv-00202-JF, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) for example, the plaintiff successfully and broadly claimed "its software, source codes, data, formula, and other technical information developed as proprietary and confidential products and services" were trade secrets. But there, the plaintiff also explained that it "designe[d] and manufacture[d] hotel guest room telecommunication solutions," allowing the inference that the source code and other data were related to those

12

products or services. *Id.* at *1. Here, Plaintiffs' allegations provide no facts or context that outline the boundaries of their purported secrets.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' misappropriation of trade secrets claim. Unlike the previous claims, however, the Court will grant Plaintiffs one final bite at the apple because its allegations regarding its training data and programs are new.

## G.    Breach of Contract

Plaintiffs' eighth, ninth, and tenth claims are for breach of the purchase, employment, and contractor agreements. *See* SAC ¶¶ 89–119.

Defendants attached to their motion to dismiss four exhibits purporting to be the contracts in question. *See* Dkt. Nos. 31-1, 31-2, 31-3, 31-4. Exhibits 1 and 2 appear to be an agreement between Calsoft and Panchumarthi to purchase PVR. *See* Dkt. No. 31-1, 31-2 (collectively, "Purchase Agreement"). Exhibit 3 appears to be an agreement employing Panchumarthi as the CEO of PVR. *See* Dkt. No. 31-3 ("Employment Agreement"). Exhibit 4 appears to be an agreement between Calsoft and Truinfo to hire Truinfo as a sub-contractor. *See* Dkt. No. 31-4 ("Contractor Agreement").

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, when a "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," the court may treat that document as part of the complaint itself. *Id.* at 1002 (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)); *see also Lee*, 250 F.3d at 688 ("If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them.") (quotation marks omitted). "[A] court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Khoja*, 899 F.3d at 1003 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

13

2006)). And the court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiffs' eighth, ninth, tenth, and eleventh claims all "necessarily rely" on the exhibits submitted by Defendants. Because Plaintiffs do not contest the authenticity of any exhibit, the Court will deem those documents incorporated by reference.

### 1. Breach of Purchase Agreement

Plaintiffs allege that Panchumarthi breached the Purchase Agreement by accessing confidential information and using that information to mislead its clients and compete against them. *See* SAC ¶¶ 96–100.

Section 8.2 of the Purchase Agreement prohibits Panchumarthi from competing and soliciting Calsoft's clients or employees for two years after the closing date of the agreement. *See* Dkt. No. 31-1 § 8.2. Section 8.3 of the Purchase Agreement requires Calsoft and Panchumarthi to "keep all Confidential Information of each other party and its Affiliates confidential . . . for the purpose of the transactions contemplated hereby; and . . . not to use the Confidential Information of the other party and its Affiliates for any purpose other than . . . in connection with the consummation of the transactions contemplated hereby . . . ." *Id.* § 8.3. That section further states that "[t]he obligations of [Calsoft] under this Section 8.3 shall terminate . . . upon completion of the Closing." The Purchase Agreement was closed on February 16, 2016. *See* Dkt. No. 31-2; *see also* SAC ¶ 14.

First, Plaintiffs allege that Defendants violated the Purchase Agreement's non-compete clause. The Purchase Agreement unambiguously limits Panchumarthi's obligation to not compete with Calsoft until two years after the closing date, February 16, 2016. *See* Dkt. No. 31-1 § 8.2. Thus, by February 16, 2018, Defendants were no longer prohibited from competing against Plaintiffs.[1] Plaintiffs allege that Defendants began

---

[1] In passing, Defendants point out that the non-compete and non-solicitation clauses in the Purchase Agreement may be unenforceable. *See* Dkt. No. 31 at 20 n.9. The Court need not resolve this issue, however, because Plaintiffs' eighth claim, to the extent it alleges breach of Defendants' non-compete obligations, fails for other reasons.

14

competing against them "on or about February 11, 2019," over one year after Section 8.2 expired by its own terms. SAC ¶ 33. Thus, Plaintiffs' eighth claim fails to the extent it is based on Defendants' alleged breach of Section 8.2.

Next, Plaintiffs allege that Defendants breached Sections 8.3 and 11.2 by using their confidential information. The excerpts of the Purchase Agreement provided by Defendants are not complete; they do not include the provision defining "Confidential Information" or Section 11.2. Plaintiffs' second amended complaint, however, defines "Confidential Information" (*see* SAC ¶ 92) and alleges that Section 11.2 "provides that Defendant Panchumarthi's confidentiality obligations survive the termination of the contract" (*see id.* ¶ 94). These allegations must be accepted as true because they are not contradicted by any document incorporated by reference. *Cf. Sprewell*, 226 F.3d at 988 ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

According to the second amended complaint, "Confidential Information" under the Purchase Agreement includes "all confidential and proprietary information, including information, materials, documents, customer lists, financial reports, business plans and marketing data that relate to the business, strategies or operations of [Calsoft and PVR]." SAC ¶ 92. Plaintiffs allege that Defendants breached Section 8.3 by using its "customer lists and data." *Id.* ¶ 96. Because Defendants' confidentiality obligations allegedly survive the Purchase Agreement's termination (*see id.* ¶ 94) and the Court must accept Plaintiffs' allegations as true, Plaintiffs have adequately alleged a breach of the Purchase Agreement.

Accordingly, the Court GRANTS IN PART Defendants' motion to dismiss Plaintiffs' eighth claim for breach of the Purchase Agreement. Plaintiffs' claim is dismissed without leave to amend to the extent it alleges a breach of Defendants' obligation not to compete. Defendants' motion to dismiss Plaintiffs' eighth claim is otherwise DENIED.

### 2. Breach of Employment Agreement

Plaintiffs next allege that Panchumarthi breached the Employment Agreement for the same reasons he breached the Purchase Agreement. *See* SAC ¶¶ 101–09. Unlike the previous breach of contract claim, however, this claim entirely fails.

Section 8 of the Employment Agreement prohibits Panchumarthi from competing against Plaintiffs during the term of his employment and one year after. *See* Employment Agreement § 8. Section 9 of the agreement prohibits Panchumarthi from soliciting Plaintiffs' customers and employees for the same period. *See id.* § 9. Section 10 of the agreement requires Panchumarthi to keep Plaintiffs' confidential information confidential indefinitely. *See id.* § 10.

However, two years after the parties signed the Employment Agreement, they executed the Contractor Agreement, which explicitly terminated all provisions of the Employment Agreement. *See* Contractor Agreement § 14.9. Specifically, Section 14.9 of the Contractor Agreement states that:

> [The parties] agree that upon the execution and delivery of this Agreement, the Employment Agreement dated March 2, 2016 between PVR and Venkata Panchumarthi shall automatically terminate, whereupon the provisions thereof, including without limitation Sections 8 and 9 thereof, shall cease to be binding upon them.

*Id.* Plaintiffs do not dispute that Section 14.9 terminates the Employment Agreement in its entirety. Indeed, Plaintiffs completely fail to address the effect of Section 14.9 in their opposition. *See* Dkt. No. 33 at 17–18.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' ninth claim for breach of the Employment Agreement. Because further amendment of this claim is futile, dismissal is without leave to amend.

### 3. Breach of the Contractor Agreement

Plaintiffs allege that Defendants breached the Contractor Agreement by using their confidential information to solicit its employees and clients. SAC ¶¶ 110–19.

Section 6 of the Contractor Agreement states that:

[E]xcept as directed by [Calsoft], [Defendants] will not at any time during or

after the term of this Agreement disclose any Confidential Information to any

person whatsoever, or permit any person whatsoever to examine and/or make

copies of any [such information] . . . .

*See also* SAC ¶ 111. The agreement broadly defines "Confidential Information" as "[a]ll

such information concerning Clients of [Calsoft] and services rendered by [Calsoft] to such

clients . . . ." *See* Contractor Agreement § 6. Put simply, the Contractor Agreement

prohibits Defendants from disclosing any confidential information.

The second amended complaint, however, contains no factual allegations

suggesting that Defendants *disclosed* any information about Calsoft's clients or services

rendered to any third party.[2] Rather, the crux of Plaintiffs' complaint revolves around

Defendants' purportedly unauthorized access and use of such information. *See* SAC

¶¶ 114–17.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' tenth

claim for breach of the Contractor Agreement. Because Plaintiffs have been unable to

meaningfully amend their allegations, dismissal is without leave to amend.

## H.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' eleventh claim is for breach of the implied covenant of good faith and

fair dealing. *See id.* ¶¶ 120–129.

A claim for breach of the implied covenant of good faith and fair dealing is similar

to a breach of contract claim except the plaintiff must show "the defendant unfairly

---

[2] Plaintiffs do not argue that Section 6 of the Contractor Agreement implicitly forbids use
of the "Confidential Information." *See* Dkt. No. 33 at 18–19. Nor could they. Unlike the
Purchase and Employment Agreement, the Contractor Agreement unambiguously
prohibits only disclosure, not use. *Cf. Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App.
4th 1239, 1246 (2006) ("In determining whether an ambiguity exists, a court should
consider not only the face of the contract but also any extrinsic evidence that supports a
reasonable interpretation."). Comparing the three contracts at issue highlights the
difference in language. *Compare, e.g.*, Purchase Agreement § 8.3 (agreement "not to
disclose or reveal . . . and not to use the Confidential Information") *with* Contractor
Agreement § 6 (agreement to "not at any time . . . disclose any Confidential Information").

interfered with the plaintiff's rights to receive the benefits of the contract." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (citations omitted).

Here, Plaintiffs' allegations relating to their claim for breach of the implied covenant of good faith and fair dealing are largely identical to their allegations for breach of the Purchase, Employment, and Contractor Agreements. *See* SAC ¶¶ 125–27. The claim therefore rises and falls with their underlying contract claims. Accordingly, Plaintiffs' eleventh claim fails as to the Employment and Contractor Agreements, but not as to the Purchase Agreement.

Plaintiffs briefly allege that Defendants breached the implied covenant in other ways, such as "evad[ing] the spirit of the bargain, by falsification of facts, lack of diligence, willful rendering of imperfect performance," and so forth. SAC ¶ 124. These allegations appear to be lifted from Comment "d" to the Restatement (Second) of Contracts § 205. In any case, Plaintiffs provide no facts supporting those allegations.

Accordingly, the Court GRANTS IN PART Defendants' motion to dismiss Plaintiffs' eleventh claim for breach of the implied covenant of good faith and fair dealing to the extent the claim is based on Defendants' breach of the Employment and Contractor Agreements. Dismissal is without leave to amend. The Court otherwise DENIES Defendants' motion to dismiss Plaintiffs' eleventh claim.

## I. Computer Fraud and Abuse Act

Plaintiffs' twelfth claim is for violation of the CFAA, 18 U.S.C. §§ 1030 *et seq. See* SAC ¶¶ 130–37.

Under the CFAA, anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished . . . ." 18 U.S.C. § 1030(a)(2)(C). A "protected computer" includes any computer "used in or affecting interstate or foreign commerce or

communication." *Id.* § 1030(e)(2)(B). The CFAA allows "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *Id.* § 1030(g).

Application of the CFAA here is straightforward. Plaintiffs allege that when the Contractor Agreement was terminated on January 11, 2019, Panchumarthi was no longer authorized to access their computers (*i.e.*, Plaintiffs' email and Dropbox accounts). *See id.* ¶¶ 24–25, 131–32. They then allege that Panchumarthi intentionally accessed their computers on February 11, 2019. *See* SAC ¶¶ 25–26, 31, 132–33. Panchumarthi allegedly obtained information (*i.e.*, employee lists, customer lists, and other intellectual property) when he accessed Plaintiffs' computers. *See id.* ¶¶ 26, 31, 132–33. And Plaintiffs allege that they were harmed by Panchumarthi's access because he destroyed information and used that information to poach their employees and customers. *See id.* ¶¶ 29, 32–33, 135.

Defendants argue that Panchumarthi's access could not have been unauthorized because he used access credentials that were still valid. *See* Dkt. No. 31 at 25–26. Therefore, Defendants reason, Panchumarthi's conduct could not have risen to the level of "breaking and entering" contemplated by the Ninth Circuit. *Id.* at 25 (citing *hiQ Labs, Inc. v. LinkedIn Corp.*, 928 F.3d 985, 1001 (9th Cir. 2019)). The Ninth Circuit's analogy to "breaking and entering" in *hiQ Labs*, however, was mere dicta, not a stringent legal standard.

*hiQ Labs* is also distinguishable. In that case, a data analytics company scraped publicly available information from a professional networking site in violation of the site's user agreement. *See* 928 F.3d at 989–91. The Ninth Circuit held that the data analytics company did not violate the CFAA because it only accessed information that was accessible by the general public. *Id.* at 1001–02. By contrast, Plaintiffs' complaint makes clear that its email servers and Dropbox accounts were private and not visible to the public. Plaintiffs also allege that the information accessed by Panchumarthi was not publicly accessible.

*United States v. Nosal ("Nosal II")*, 884 F.3d 1024 (9th Cir. 2016) is particularly apt. In *Nosal II*, the defendant accessed his former employer's computer by using a coworker's password. *Id.* at 1030–31. Even though he used legitimate access credentials, the defendant still violated the CFAA because his former employer already revoked *his* permission to access the computer when he left the company. *Id.* at 1035. The panel majority flatly rejected the dissent's argument that the defendant's behavior amounted to nothing more than innocent password-sharing simply because the ex-coworker voluntarily gave up his password. *Id.* at 1038; *see also id.* at 1051 (Reinhardt, J., dissenting). Rather, "a former employee whose computer access has been revoked can[not] access his former employer's computer system and be deemed to act with authorization." *Id.* at 1036–37; *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly.").

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' twelfth claim for violation of the CFAA.

### J. Unfair Competition Law

Plaintiffs allege that Defendants violated the UCL in their fourth claim. *See* SAC ¶¶ 60–62. The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

As explained above, Plaintiffs have stated a claim under the CFAA. Therefore, Plaintiffs have, at a minimum, stated a claim under the unlawful prong of the UCL. *See Cel-Tech*, 20 Cal. 4th at 180 ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' UCL claim.

### K.    Alter Ego Liability

Plaintiffs seek to impose alter ego liability on Defendants.  *See* SAC at 26.

As an initial matter, Plaintiffs' invocation of the alter ego doctrine is not accurate. The alter ego doctrine is generally used to pierce the "corporate veil" and "and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation."  *Sonora Diamond Corp. v. Superior Court.*, 83 Cal. App. 4th 523, 538 (2000).  Alter ego liability is properly imposed "where an abuse of the corporate privilege justifies holding the *equitable ownership* of a corporation liable for the actions of the corporation."  *Id.* (emphasis added).  The doctrine aims to "prevent[] individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds."  *Id.*

But here, Plaintiffs do not seek to hold Panchumarthi liable for Truinfo's actions. Instead, Plaintiffs wish to hold Truinfo liable for Panchumarthi's actions.  This is called "reverse piercing."  *See Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1518 (2008).  With one exception, California courts have rejected reverse piercing actions. *See id.* (rejecting reverse piercing of corporations); *United States v. Kim*, 797 F.3d 696, 703 (9th Cir. 2015) ("Indeed, California has rejected 'reverse-piercing' actions that hold an alter ego corporation liable for the actions of its shareholders."); *but see Curci Investments, LLC v. Baldwin*, 14 Cal. App. 5th 214 (2017) (distinguishing *Postal* and permitting reverse piercing of LLCs).

Even if reverse piercing was permitted in this case, Plaintiffs must establish that (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and (2) "adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice."  *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal.3d 353, 364 n. 9 (1977)).  Plaintiffs' allegations on both prongs are conclusory.  *See* SAC ¶ 6.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs'

assertion of alter ego liability. To the extent they seek to impose alter ego or reverse piercing liability against Truinfo, claims one, two, three, four, five, six, seven, ten, eleven, and twelve are dismissed without leave to amend.

## IV. Conclusion

The Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss as follows:

- Claims One, Two, Three, Four, Five, Six, Nine, and Ten are dismissed without leave to amend;
- Claim Seven is dismissed with leave to amend;
- Claim Eight is dismissed without leave to amend only to the extent it alleges a breach of Defendants' obligation not to compete;
- Claim Eleven is dismissed without leave to amend only to the extent it alleges a breach of the Employment and Contractor Agreements;
- Plaintiffs' assertion of alter ego liability against Truinfo is dismissed; and
- The Court DENIES Defendants' motion to dismiss Claims Four and Twelve.

If they seek to amend, Plaintiffs must file their third amended complaint by **February 14, 2020**. Plaintiffs may not add additional claims or parties without further leave of the Court. Defendants need not answer the second amended complaint unless Plaintiffs give notice that they do not intend to file a third amended complaint.

**IT IS SO ORDERED.**

Dated: January 31, 2020 _____

NATHANAEL M. COUSINS
United States Magistrate Judge